LISA SCOLARI
Attorney at Law
20 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10007
scolarilaw@gmail.com
(212) 227-8899

October 20, 2025

Hon. Naomi Reice Buchwald
United States District Court
Southern District of New York
New York, N.Y. 10007
via ECF

Re: United States v. Adil Duran,
24 Cr. 167 (NRB)

Your Honor:

Adil Duran will appear before the Court for sentencing on November 6, 2025.

### *Procedural background*

On November 19, 2024, Adil Duran plead guilty, pursuant to a plea agreement with the government, admitting to car jacking and possession of a gun in relation thereto. 18 U.S.C. §2119 and 18 USC 924( c).  The plea agreement and PSR concur that his guideline range is 30-37 months with a mandatory consecutive 60 months for a total range of 90-97 months. The PSR recommends a 90 month sentence. (PSR p. 21) On September 25, 2025 in the Eastern District, Adil was sentenced to 37 months on an unrelated MDC assault.[1] In light of the 18 USC 3553(a) factors in this case, the defense seeks a downward variance and partially concurrent sentence so that Adil will serve a total of 84 months on both cases.[2]

### *Nature and Circumstance of the offense*

A gunpoint car theft is a serious offense. Fortunately, despite the nature of the theft it happened quickly and no one was hurt. The video of the event shows that there were three people involved in taking the vehicle during an incident that lasted about 42 seconds. However, there is no question that conduct was serious and inexcusable.

### *History and Characteristics of Adil Duran*

Adil is a twenty-three year old Dominican citizen who came to the U.S. as a legal permanent resident when he was twelve. Until then, Adil grew lived in the countryside with a

---

[1] The PSR, which was prepared on February 6, 2025 failed to note Adil's E.D.N.Y. indictment, which was filed on January 8, 2025. His sentence on that case counts as a prior sentence under §4A1.2 and increases his criminal history score by three points to CH III. With an total offense level of 19, the correct guideline range is 37-46 months.

[2] The requested sentence can be accomplished by a variance to a sixty month sentence a direction that thirteen of those months are to run concurrent with the E.D.N.Y. sentence. 25 Cr. 009 (ARR)

family that was barely surviving. He often went hungry because his family could not afford food and although his home had electricity it was periodically turned off because they could not pay the bill. His mother was the light of his life, she was "very humble", kind, and loving to him. Adil's mother made sure that Adil attended school and encouraged him to do his best, because an education would afford him a better life.

Shortly before Adil's family was to emigrate to the U.S. his thirty-one year old mother suddenly died. She had been in good health and her death was totally unexpected. Adil was shocked by the loss and still has no idea why she died. He says " he lost a lot when his mother died" and "he became a little insane". (PSR ¶ 42) Despite living with family members in the U.S. Adil had difficulty coping because he was grieving. His paternal aunt, with whom he initially lived, tried to get him to go to school but he wasn't ready and refused to go. Thereafter, his father made a half-hearted effort, but gave up when Adil resisted. Adil said that he was "stupid" for refusing, but his mother was the one who had convinced him to attend school and she was gone. School would have been a challenge because Adil didn't speak English and he lost interest in learning after his mother died.

Adil's father was busy, "always working", but his failure to insist that twelve-year old Adil attend school was the beginning of Adil's downfall in the U.S. Adil feels that his life would have been very different if his mother had lived, her death was the point at which his life began to fall apart. When he came to the U.S. he was still in mourning and had no one to comfort or guide him. After a half hearted attempt to get him to attend school, his father, who had his own struggles as a new immigrant, focused on working and essentially forgot about Adil.

Adil not only failed to get an education or learn English but was also without any adult supervision from the age of twelve. He was free to hang around and find a substitute "family' in his crime ridden Bronx neighborhood. Unsurprisingly he didn't find good role models. Although he lived with actual family members, they essentially abandoned him to the streets. Without any guidance, discipline or support Adil never had a chance to do well. His lack of English and education impeded his ability to get a decent job, thus, at twenty-three he has virtually no work history.

Since his arrest Adil has felt the loss of his mother even more intensely than before. He has had no support while in custody. No family member has contacted counsel or responded to counsel's overtures. No one has visited Adil or sent him money. He was excited to be a father to the daughter he shares with Perla Cristal Aleman and he has her name tattooed on his wrist. But Perla has also abandoned Adil since his arrest. Both Adil I and I have asked his brother Wadi to send him money and to bring his daughter to visit but his brother has failed to do either. Probation got no response in their efforts to reach Wadi (PSR ¶ 44).

Adil was only twenty-one at the time of the incident in this case. Extensive social science studies have shown that the prefrontal cortex of a young man's brain, that which governs executive function, judgment and impulse control, does not fully evolve until he is twenty-six. Unsurprisingly Adil's lack of education, institutional or family guidance did not make up for the

his lack of brain development. The fact that he smoke pot every day did not help. His participation in the robbery in this case and impulsive assault in the E.D.N.Y. case are symptoms of his absence of judgment. [3]

### *The need for punishment, deterrence, and to promote respect for the law*

The combined potential sentence of more than ten years, comprising the 37 months he was sentenced to in EDNY and the 90 months recommended here, is excessive considering Adil's background. While some prison is appropriate, it is not necessary to sentence him so harshly to both punish and deter him. Further, he is not a citizen and will be deported to the Dominican Republic when he finishes his sentence. He will barred for life from returning to see his family and his young daughter. That consequence is extremely harsh for a young man who has no family in the Dominican Republic and who will never be a parent to the daughter he must leave behind. Since the charges are classified as violent Adil will not qualify for a sentence reduction based on any First Step Act programs he takes in the BOP. The requested seven year sentence would be sufficient but not greater than necessary to accomplish the goals of 18 USC §3553(a).

### *Conclusion*

In light of the foregoing, we respectfully submit that a total 84 month sentence would be appropriate in this case.

Respectfully,
*Lisa Scolari*
Lisa Scolari

---

[3] The MDC assault that Adil plead to was triggered when another inmate insulted his dead mother and Adil impulsively lashed out in response.